UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:09-CR-67-GFVT-HAI-2 |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| JEFFREY LEE McDANIEL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

On referral from District Judge Van Tatenhove (D.E. 120), the Court considers reported violations of supervised release conditions by Defendant Jeffrey Lee McDaniel.

Judge Van Tatenhove entered Judgment against Defendant in May 2010 after Defendant pleaded guilty to Conspiracy to Manufacture 500 Grams or More of a Mixture or Substance Containing Methamphetamine, Possession of Firearms by a Convicted Felon, and Possession of a Short-Barreled Shotgun. Defendant was sentenced to 176 months of imprisonment (later reduced to 141 months) followed by five years of supervised release. Defendant was released on January 10, 2020.

**I.**

On October 23, 2020, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges three violations. The first two concern an arrest on state charges in October 2020. However, Violations #1 and #2 were dismissed upon motion of the government at Defendant's preliminary hearing on February 25. D.E. 132.

Violation #3 alleges a violation of the condition that requires Defendant to notify the probation officer at least ten days prior to any change in residence or employment. According to the Report,

> On September 22, 2020, a home visit was conducted at . . . the defendant's last reported address, which is owned by the defendant's brother, James Catron. Catron answered the door and advised the defendant did not reside there, but he advised the defendant does come by regularly to visit. The defendant did not notify this Officer of a change in residence.

This is a Grade C violation.

On November 13, 2020, the USPO issued an Addendum to the report, which charges an additional violation. According to the Addendum,

> On November 13, 2020, this Officer made contact with the defendant at the Laurel County Detention Center, in London, Kentucky, following the service of the supervised release violation warrant on November 12, 2020. This Officer asked the defendant to submit a urine specimen for drug testing purposes, but he refused and stated he wanted to speak with his attorney. This Officer reminded the defendant he has conditions of release stating he is to submit to drug testing, but he continued to refuse to submit to a drug test.

Violation #4 charges a single violation of two of Defendant's conditions, each of which requires him to submit to drug testing at the direction of his probation officer. This is a Grade C violation.

The Court conducted an initial appearance on the Report and Addendum pursuant to Rule 32.1 on November 13, 2020. D.E. 123. Defendant requested a preliminary hearing, which was set for November 24. *Id.* Upon Defendant's motion, that hearing was continued twice and then converted to a detention hearing. At the December 11 detention hearing, the probation officer testified. D.E. 130. The Court found that Defendant failed to satisfy the heavy defense burden under 18 U.S.C. § 3143(a), and remanded Defendant to the custody of the United States Marshal. *Id*.

The preliminary hearing was then held on February 25, 2021. The government moved to dismiss the first two violations, and the motion was granted. D.E. 132.

At the final hearing on March 3, 2021, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 133. Defendant competently entered a knowing, voluntary, and intelligent stipulation to Violations #3 and #4. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each violation as described in the Report and Addendum. The United States thus established both violations under the standard of section 3583(e).

## II.

The Court has evaluated the entire record, the Report, Addendum and accompanying documents, and the sentencing materials from the underlying Judgment in this District, including the sentencing transcripts. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to (in addition to two firearms charges), a Class A drug manufacturing charge. *See* 21 U.S.C. §§ 841, 846. Such a conviction carries a five-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violations #3 and #4. Given Defendant's criminal

3

history category of IV (the category at the time of the conviction in this District) and Grade C violations, Defendant's range, under the Revocation Table of Chapter Seven, is six to twelve months. USSG § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Due to his drug trafficking convictions, Defendant faces no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

### III.

At the final hearing, the government requested revocation with six months of imprisonment followed by the continuation of Defendant's current five-year term of supervision. The defense argued for time-served followed by the remainder of the current term of supervision.

The government acknowledged that Defendant had accepted responsibility and noted that his criminal history was not particularly bad for a Category IV. Defendant had also been successful on supervision for nearly a year. Yet, the government argued, these facts did not warrant a below-Range sentence.

First, the government argued, Defendant's behavior was a significant breach of the Court's trust because Defendant cannot be successfully supervised if he cannot be found. Second, the circumstances of the underlying federal conviction are aggravating. This was a Class A drug conviction that also involved firearms and explosives. Third, although the conduct surrounding the October state arrest were dismissed as violations, that conduct remains aggravating conduct for the current violations. Defendant was in jail when the probation officer finally located him. The government noted that Defendant also did not notify his probation officer of his state arrest, but this failure to notify was not charged as a violation.

The government addressed Violation #4, which involved Defendant refusing to take a drug test without first speaking with his attorney. This was indeed a violation, as Defendant admitted. But the government found the conduct "understandable" since Defendant was facing state felony drug charges at the time.

The defense argued that leniency was warranted because this was Defendant's first set of violations (after a year on supervision), and they are Grade C, where revocation is not mandated. The defense observed that Defendant has been jailed for about 110 days and argued that a time-served sentence would be adequate. According to the defense, this period of imprisonment was made worse by the COVID-related jail lockdown.

The defense called attention to the number of drug tests Defendant has passed. The probation officer and the halfway house together had performed five drug tests, some or all of which were unannounced, and Defendant passed them all. Defendant also passed drug tests for the two jobs he has held while on supervision.

According to the defense, Defendant was employed whenever he could be. The defense argued that Defendant was not at his brother's house because he was afraid of exposing his brother's family (including a niece with multiple sclerosis) to COVID because he was working. According to the defense, Defendant never left the Laurel County area.

Defendant addressed the Court and said he intends to comply with his conditions going forward. He says he has set many goals for his life, including remaining employed. He apologized to his probation officer, who he said had done extra work for him to help him stay employed.

## IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the section 3583(e) analysis, as well as the Guidelines Range.

The undersigned recommends a sentence of six months' imprisonment, followed by the remainder of Defendant's existing term of supervision, which is set to expire January 9, 2025.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant cooked methamphetamine both to sell and to use. He was also caught possessing guns, including an illegally short shotgun.

The Court next considers Defendant's history and characteristics and the need to deter criminal conduct and protect the public. Defendant poses a clear risk of more crimes, given his history of drug abuse and aggravated criminal behavior. Although he only has two convictions on his record, his first arrest was over 30 years ago. In terms of mitigation, Defendant did have a difficult childhood. But he has had a long time to grow beyond those scars.

Another factor focuses on opportunities for education and treatment. This is not an important factor in this case. There is no direct evidence Defendant has returned to *using* drugs, but he does need to be very careful.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the

seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Here, this is Defendant's first violation and he has accepted responsibility. Yet the conduct to which he pleaded guilty is a significant trust breach. His unannounced change in residence placed him outside the Court's purview. And his refusal to provide a urine sample disregarded his conditions and the authority of his probation officer.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence. A sentence at the bottom of the Range is appropriate. However, Defendant should expect that, if he violates again, the penalty will likely be higher. For the reasons discussed herein, the Court finds the recommended sentence is sufficient, but not greater than necessary, to address the pertinent penalty factors.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon his stipulation, Defendant be found guilty of Violations #3 and #4.
2. Revocation with a term of imprisonment of six months.
3. Continuation of Defendant's existing term of supervised release under the conditions previously imposed.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with

the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 8th day of March, 2021.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge